# EXHIBIT A

## COMMONSEALTH OF MASSACHUSETTS

HAMPDEN, SS.                                    SUPERIOR COURT DEPARTMENT

```
                                    )
ALINA THOPURATHU,                   )
        Plaintiff                   )
                                    )
v.                                  )          C.A. No.  25CV493
                                    )
SPRINGFIELD COLLEGE,                )
MARY-BETH COOPER,                   )
MEGHAN MIGEON,                      )
MELINDA CONNORS, AND                )
SARAH MCGOWAN,                      )
        Defendants                  )
                                    )
```

## COMPLAINT AND DEMAND FOR JURY TRIAL

## **INTRODUCTION**

1. Plaintiff Alina Thopurathu (hereinafter, "Ms. Thopurathu") was enrolled in Defendant Springfield College's Physician Assistant Program from 2017 until her unlawful dismissal in July 2023, two months **_after_** her anticipated date of graduation.

2. Ms. Thopurathu had been in compliance with all of the Program's requirements and received high grades and positive and appropriate feedback from the Program's advisors and instructors.

3. In November, 2022, Ms. Thopurathu submitted feedback about her experience on a particular clinical rotation involving a sensitive medical procedure.

2

4. Thereafter, Defendants unlawfully and without cause or justification, began a campaign against Ms. Thopurathu, sabotaging her stellar academic record and ultimately culminating in her dismissal from the Program.

5. This action arises out of the Defendants' breach of their contractual and other obligations to Ms. Thopurathu, as well as the Defendants' violation of Mass. General Laws, chapter 93A and 42 U.S.C. §2000d.

## **PARTIES**

6. Plaintiff Alina Thopurathu is a natural person residing in Bedford, Middlesex County, Massachusetts.

7. Defendant Springfield College is a federally funded, private, non-profit university located in Springfield, Massachusetts.

8. Defendant Mary-Beth Cooper ("Cooper") is a natural person and was at all times relevant to this Complaint President of Springfield College. Cooper is sued in her individual and official capacity.

9. Defendant Meghan Migeon ("Migeon") is a natural person and was at all times relevant to this Complaint Director of the PA Program. Migeon is sued in her individual and official capacity.

10. Defendant Melinda Connors, PA-C ("Connors") is a natural person and was at all times relevant to this Complaint co-director of clinical education of the PA Program. Connors is sued in her individual and official capacity.

11. Defendant Sarah McGowan, PA-C ("McGowan") is a natural person and was at all times relevant to this Complaint co-director of clinical education of the Program. McGowan is sued in her individual and official capacity.

## FACTS

12. At all times relevant to this Complaint, Defendant Springfield College offered a Physician Assistant master's degree program (hereinafter, the "Program").

13. Ms. Thopurathu applied to and was accepted into Springfield College, beginning as an undergraduate in the spring semester of 2017, and matriculating into the Program in the fall semester of 2021.

14. The Program has a Student Handbook (hereinafter the "Handbook"), which sets forth the academic and disciplinary requirements for students in the Program. All students in the Program sign a contract that requires them to adhere to the terms of the Handbook.

### CLINICAL ROTATIONS

15. The Program consists of a combination of classes in a traditional classroom setting and practical "Clinical Rotations," which occur in a professional setting such as a hospital.

16. In each Clinical Rotation, a professional (called a "Preceptor") observes the student and provides feedback, which forms the basis for scoring students.

17. At the end of each Clinical Rotation, a student receives two scores: an objective score from a written test, and a subjective score from the Preceptor

on the student's performance in several "Entrustable Professional Areas" (hereinafter "EPA"s).

18. After each Clinical Rotation, students are required to evaluate the Preceptor and the Clinical Site where the Rotation took place.

19. The Handbook requires students to complete eleven (11) Clinical Rotations.

20. According to the standards set forth in the Handbook, Ms. Thopurathu passed all eleven required Clinical Rotations.

21. Ms. Thopurathu completed her first five Clinical Rotations with an average score of 91.58% and with praise from Preceptors.

22. For her sixth Clinical Rotation, the OBGYN Rotation, Ms. Thopurathu trained under Kristen Dardano, MD.

23. At the end of the OBGYN Rotation, in November 2022, Ms. Thopurathu submitted her "Student Evaluation of the Clinical Site" (hereinafter "the Evaluation").

24. In the "Weaknesses" section of the Evaluation, Ms. Thopurathu wrote:

> [w]hile I was at gyn surgery I was scheduled to see a D&E[1]. I wish I was asked prior to being assigned to this case if I was comfortable with seeing a D&E. I was very overwhelmed by this experience. However, I was afraid of speaking up because I did not want to cause a seen [sic]. In the future, I believe students should be asked if they are comfortable with seeing a D&E, rather than being assigned the procedure without patient information. I was unable to look up the context of this case. I had wrongfully assumed, that this was status post a spontaneous abortion.

---

[1] A dilation and evacuation ("D&E") is a surgical procedure primarily used for second-trimester abortions.

25. Dr. Dardano's evaluation of Ms. Thopurathu, gave her an 84.5% score for the EPAs.

26. Dr. Dardano commented that Alina "actually asked good questions. . . Patients seemed to like her. . .Overall I enjoyed working with her. . .She has good compassion and bedside manner."

27. Notably, however, Dr. Dardano also asked the Defendants to contact her regarding the evaluation and left another comment that stated:

> [a]s Alina was unable to have her women's health skills filled out and I do not have much feedback from others, some form of remediation in office practice may be advisable. She should feel much more comfortable with women's health and being proactive and I do not think this is demonstrated. Let me know if I can be of direct help by having her come back here. Sometimes a complete new objective rotation is necessary at another sit.

28. On information and belief, consistent with the policies set forth in the Handbook, Dr. Dardano intended this comment to trigger limited remediation, such as "in office practice" as Dr. Dardano suggested in her comment.

29. Instead of prescribing limited remediation, the Defendants decided to construe Dr. Dardano's comments as failure in the OBGYN Rotation, even though Ms. Thopurathu received 84.5% overall, which the Handbook designates as passing.

## ADVISOR NOTES AND THE REMEDIATION CONTRACT

30. In or around December of 2022, after completing the OBGYN Rotation under Dr. Dardano, the comments that the Administration entered into Ms. Thopurathu's Student Advising File changed tone.

31. The notes in Ms. Thopurathu's Student Advising File after the OBGYN Rotation accused Ms. Thopurathu of lacking confidence and other negative allegations, whereas before the OBGYN Rotation, notes in Ms. Thopurathu's Student Advising File praised and supported her performance.

32. On December 2, 2022, Defendant McGowan emailed Ms. Thopurathu to inform her that the Defendants would be discussing Dr. Dardano's evaluation of Ms. Thopurathu's performance in the OBGYN Rotation.

33. Defendant Connors was copied on this email, which Ms. Thopurathu responded to on December 5, 2022 to ask about the evaluation.

34. Connors replied to Ms. Thopurathu inviting her to a meeting with Defendants Connors, McGowan, and Migeon on December 8, 2022.

35. At the meeting on December 8th, Connors, McGowan, and Migeon presented Ms. Thopurathu with a "Remediation Contract," and a "Contract for Incomplete Grade."

36. The Remediation Contract invoked "Academic Probation," which is not defined in the Remediation Contract, the dismissal notice, or the Handbook.

37. The accompanying Contract for Incomplete Grade stated that a "student may request from the instructor a grade of incomplete (I) in situations where

exceptional circumstances beyond his or her control (such as incapacitating illness or a death in the family) prevent him or her from completing course requirements."

38. The Contract for Incomplete Grade construed Ms. Thopurathu's performance in the OBGYN Rotation as "Incomplete," which was improper according to the Handbook.

39. The Remediation Contract required Ms. Thopurathu to repeat the OBGYN Rotation.

40. The Defendants Connors, McGowan, and Migeon coerced Ms. Thopurathu, with the threat of dismissal from the Program, to sign the Remediation Contract and the Contract for Incomplete Grade, which held her to higher standards than the Handbook and construed a rotation she had passed as a failure.

41. The Remediation Contract discriminated against Ms. Thopurathu in the following ways:

- Construed a passing grade in Dr. Dardano's OBGYN rotation as "Incomplete."
- Contrived "the need for multiple pap smears," which other students in the OBGYN rotation were not required to perform.
- Deprived Ms. Thopurathu of the opportunity to remediate any subsequent clinical rotations, which is a higher standard than the Handbook designates for students in the Program.
- Invoked ambiguous "Academic Probation."
- Required Ms. Thopurathu to request an "Incomplete" grade in Dr. Dardano's OBGYN rotation despite an absence of exceptional circumstances beyond her control.
- Required Ms. Thopurathu to complete an additional rotation, resulting in a total of twelve clinical rotations, which is more than other students in the Program were required to complete per the Handbook.

7

42. The Remediation Contract was dated "12/5/2022," yet the Administration did not give Ms. Thopurathu a chance to review and suggest changes to the Remediation Contract before their meeting on December 8, 2022.

43. Ms. Thopurathu was so distraught when signing the Remediation Contract and Contract for Incomplete Grade that she misspelled her last name on one of the papers.

### THE LEAVE OF ABSENCE

44. On February 3, 2023, the Administration met with Ms. Thopurathu and encouraged her to take a Leave of Absence ("LOA") to address what the Administration perceived as anxiety.

45. Ms. Thopurathu's approved LOA began on February 27, 2023.

46. The Student Handbook provides that LOAs routinely last for one year, yet Ms. Thopurathu only requested and received a one-month LOA.

47. On March 20, 2023, before the end of Ms. Thopurathu's LOA, she asked Defendant Connors for leave from the upcoming "Grand Rounds" event, which is a monthly presentation and practicum with written exam that the Administration expects PA students to attend.

48. Connors denied Ms. Thopurathu's request, despite Ms. Thopurathu's ongoing LOA that Connors and her colleagues in the Administration had encouraged less than one month earlier.

## SEVENTH THROUGH ELEVENTH CLINICAL ROTATIONS

49. Ms. Thopurathu completed her seventh through eleventh Clinical Rotations, with an average score of 92.24% and praises from all of the Preceptors, including from the Preceptor in the repeat OBGYN Rotation, which left her with a 3.433 cumulative grade point average at the end of the 2023 spring semester.

50. Although the eleventh Rotation is ordinarily a student's final Rotation in the Program, and despite passing grades and positive remarks from her Preceptors, the Defendants required Ms. Thopurathu to complete an additional Clinical Rotation.

## THE TWELFTH CLINICAL ROTATION

51. Ms. Thopurathu trained under Jennifer Alix, PA-C for her twelfth Clinical Rotation, which, unlike other Rotations, occurred after the end of the school year.

52. This Rotation was to be for a period of four (4) weeks. Ms. Thopurathu was the sole student.

53. Unlike the Preceptors in Ms. Thopurathu's previous Clinical Rotations, PA-C Alix only worked approximately thirty two (32) hours per week, yet the Family Medicine Rotation required Ms. Thopurathu's attendance for thirty six (36) to forty (40) hours per week.

54. Unlike the Preceptors in Ms. Thopurathu's previous Clinical Rotations, PA-C Alix was absent for most of the first scheduled week of the Rotation and also

absent from the Rotation on at least three other days. In total, PA-C Alix observed Ms. Thopurathu for less than twelve (12) days.

55. PA-C Alix's absences necessarily precluded a full and accurate evaluation of Ms. Thopurathu's performance in the rotation, particularly regarding the EPAs.

56. PA-C Alix's EPA evaluation of Ms. Thopurathu contained criticisms that contradicted the praises of Ms. Thopurathu's other Preceptors and underscored her performance at only 77.3%.

57. PA-C Alix's evaluation of Ms. Thopurathu noted negative qualities in contrast to the careful, thoughtful demeanor that other Preceptors recognized in Ms. Thopurathu in each of her prior Clinical Rotations.

### DISMISSAL FROM THE PROGRAM

58. On July 28, 2023, the Administration met with Ms. Thopurathu to dismiss her from the Program on the grounds that she failed two Clinical Rotations.

59. Ms. Thopurathu's student transcript from the Program states that she failed only one Clinical Rotation.

60. The dismissal notice that the Administration presented to Ms. Thopurathu accused her of failing the OBGYN Rotation from the Fall 2022 semester, yet Ms. Thopurathu's transcript shows that she achieved an 84.5% score in this Rotation, which qualifies as passing according to the Handbook.

61. The Administration used the Remediation Contract to construe Ms. Thopurathu's passing grade in the OGBYN Rotation as failure and to dismiss

Ms. Thopurathu from the Program, rather than adhering to the Program's policies set forth in the Student Handbook.

62. Ms. Thopurathu pleaded with the Administration to reconsider the dismissal to no avail. Instead, the Administration provided Ms. Thopurathu with what they advertised as an opportunity to have a neutral committee of faculty members from the Program objectively review her dismissal in a process called an Ad Hoc Student Evaluation Committee ("AHSEC") Appeal.

### THE AHSEC APPEAL

63. The Administration encouraged Ms. Thopurathu to prepare a formal statement of her Appeal for the AHSEC to review.

64. Ms. Thoupurathu prepared a 41-page Appeal Statement with 78 pages of enclosures to support her request that the AHSEC overturn the Administration's decision to dismiss her from the Program.

65. At the AHSEC Appeal Hearing in January of 2024, members of the AHSEC claimed that they had reviewed the contents of Ms. Thopurathu's Appeal Statement, yet some members of the AHSEC asked abstract questions unrelated to her Appeal Statement or which demonstrated unfamiliarity with her submission.

66. On information and belief, members of the AHSEC did not thoroughly review Ms. Thopurathu's Appeal Statement and its enclosures.

67. After the AHSEC Appeal Hearing, the Administration sent Ms. Thopurathu a two-paragraph notice to inform her that the AHSEC affirmed the Administration's decision to dismiss her from the Program.

68. This notice, which failed to describe any cause for dismissal, stated that "[t]he AHSEC formally convened, thoroughly reviewed all material submitted on behalf of Alina Thopurathu, interviewed the student, and discussed the case." The AHSEC's notice to Ms. Thopurathu also failed to address any of the concerns raised in her Appeal Statement.

### THE CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT
### ALL DEFENDANTS

69. Ms. Thopurathu incorporates by reference all other paragraphs of this Complaint as though fully stated herein.

70. As is set out elsewhere in this Complaint, the Defendants committed numerous violations of federal and state law and caused the Defendant Springfield College to breach its contract with Ms. Thopurathu.

71. Ms. Thopurathu's education and future career have been severely damaged by the Defendants' actions. Without appropriate redress, Ms. Thopurathu will suffer irreversible damage to her education, career and employment prospects.

72. As a result of the foregoing, there exists a justiciable controversy between the parties with respect to the outcome, permanency, and future handling of Ms. Thopurathu's formal student record at Springfield College.

73. By reason of the foregoing, Ms. Thopurathu is entitled to a declaration that: (i) the outcome and findings made by the Defendants in the AHSEC Appeal are reversed; (ii) the Administration's coercive Remediation Contract is void for lack of consideration, (iii) the Remediation Contract violated Title VI; (iv) the Administration's decision to dismiss Ms. Thopurathu from the Program was without cause and is hereby reversed; (v) Ms. Thopurathu completed the Program according to the policies and procedures set forth in the Handbook and is hereby cleared to take the Physician Assistant National Certifying Examination (hereinafter "PANCE"); (vi) the Defendant Springfield College will confer a Master's Degree to Ms. Thopurathu, and; (vii) the Court will grant whatever further necessary or proper relief is required to ensure justice.

### COUNT II
### BREACH OF CONTRACT
### SPRINGFIELD COLLEGE

74. Ms. Thopurathu incorporates by reference all other paragraphs of this Complaint as though fully stated herein.

75. In Massachusetts, statements in "handbooks, policy manuals, brochures, catalogs, advertisements, and other promotional materials can form the basis

of a valid contract." *Russell v. Salve Regina Coll.*, 890 F.2d 484, 488 (1st Cir. 1989).

76. Ms. Thopurathu enrolled in the Defendant Springfield College and paid Defendant sums of money for her education, including tuition, fees, and other expenses. In return, Defendant Springfield College contracted to provide Ms. Thopurathu with access to the Program in accordance with the terms and conditions in the Handbook.

77. Ms. Thopurathu paid her fees and enrolled in the Program in reliance on the understanding and with the reasonable expectation that the Administration would implement and enforce the provisions and policies set forth in their official publications, including the Handbook.

78. An express contract, or alternatively, a contract implied in law or fact was formed between the Defendant Springfield College and Ms. Thopurathu.

79. The relationship between Ms. Thopurathu and the Defendant Springfield College is contractual in nature, and each party owes the other party certain duties, including those which can be found in the Handbook.

80. As set forth in this Complaint, the Defendant Springfield College repeatedly and materially breached the terms of the contract, as expressed in the Program's handbook, with Ms. Thopurathu as an enrollee in the Program, as well as deprived her of due process guaranteed to her thereunder.

81. All of the foregoing breaches of contract were wrongful, without lawful justification or excuse, prejudicial, and/or were part of an effort to achieve a

predetermined result in Ms. Thopurathu's case: a finding that she failed two clinical rotations warranting dismissal from the Program.

82. As a direct and foreseeable result of these breaches of contract, Ms. Thopurathu has sustained, and will continue to sustain, substantial injury, damage, and loss, including, but not limited to: mental anguish; severe emotional distress; injury to reputation; past and future economic loss; deprivations of due process; loss of educational opportunities; and loss of future career prospects.

83. The Defendant also breached its contract with Ms. Thopurathu by coercing her through the threat of expulsion to sign the Remediation Contract and Contract for Incomplete Grade, which do not appear in the Handbook.

84. Ms. Thopurathu seeks compensatory damages in an amount to be determined by a jury, as well as all other available forms of relief including but not limited to punitive damages, attorney's fees, costs and interest.

### COUNT III
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING SPRINGFIELD COLLEGE

85. Ms. Thopurathu incorporates by reference all other paragraphs of this Complaint as though fully stated herein.

86. In addition to its explicit terms, a contract between a University and its students, like any contract, imposes an implied obligation of good faith and fair dealing. *Clark v. State St. Trust Co.*, 270 Mass. 140, 153, 169 N.E. 897 (1930).

87. The contract between Ms. Thopurathu and the Defendant Springfield College, as expressed in the Program's Handbook, contained an implied covenant of good faith and fair dealing.

88. As is set forth in this Complaint, the Defendant Springfield College breached its covenant of good faith and fair dealing by not following the policies and procedures set out in the Handbook, and by construing Ms. Thopurathu's performance in the Clinical Rotations and administering her subsequent AHSEC Appeal in an unfair and biased manner, thereby destroying the right of Ms. Thopurathu to receive the benefits of the contract, namely her Master's Degree for Physician Assistant Studies.

89. As a direct and foreseeable result of these breaches of the Defendant Springfield College's covenant of good faith and fair dealing, Ms. Thopurathu has sustained, and will continue to sustain, substantial injury, damage, and loss, including but not limited to: mental anguish; severe emotional distress; injury to reputation; past and future economic loss; deprivations of due process; loss of educational opportunities; and loss of future career prospects.

90. Ms. Thopurathu seeks compensatory damages in an amount to be determined by a jury, as well as all other available forms of relief including but not limited to punitive damages, attorney's fees, costs and interest.

## COUNT IV
### ESTOPPEL AND RELIANCE
### SPRINGFIELD COLLEGE

91. Ms. Thopurathu incorporates by reference all other paragraphs of this Complaint as though fully stated herein.

92. As described above, the policies and procedures contained in the Handbook constitute promises and representations that the Defendant Springfield College intended to induce reliance on the part of Ms. Thopurathu.

93. In reasonable reliance, Ms. Thopurathu accepted Springfield College's offer of admission and incurred the costs of tuition and related expenses based on Springfield College's representations that it would honor its express and implied promises, including the guarantees of due process and fundamental fairness, and the implied covenant of good faith and fair dealing.

94. Ms. Thopurathu relied to her detriment on these express and implied promises and representations made by Springfield College.

95. The Defendant Springfield College breached its contract with the Plaintiff by failing to comply with its own promises and representations set forth in the Handbook.

96. Injustice can only be avoided by enforcement of Springfield College's promises and representations.

97. As a direct, proximate, and foreseeable result of the Defendant Springfield College's failure to honor its promises and representations, Ms. Thopurathu has sustained, and will continue to sustain, substantial injury, damage, and

loss, including, but not limited to: mental anguish; severe emotional distress; injury to reputation; past and future economic loss; deprivations of due process; loss of educational opportunities; and loss of future career prospects.

98. Ms. Thopurathu seeks compensatory damages in an amount to be determined by a jury, as well as all other available forms of relief including but not limited to punitive damages, attorney's fees, costs and interest.

### COUNT V
### UNJUST ENRICHMENT
### SPRINGFIELD COLLEGE

99. Ms. Thopurathu incorporates by reference all other paragraphs of this Complaint as though fully stated herein.

100. As set forth in this Complaint, Ms. Thopurathu, with the assistance of her father, paid Defendant Springfield College substantial tuition, fees, and other expenses, as well as for residential housing.

101. In paying these sums, Ms. Thopurathu conferred a benefit on the Defendant Springfield College, of which the Defendant was aware. Under the circumstances set forth in this Complaint, it would be inequitable and unjust for the University to retain any portion of the tuition, fees, and other expenses.

102. In order to avoid the Defendant's unjust enrichment at Ms. Thopurathu's expense, Ms. Thopurathu is entitled to an award of damages in the amount that the Defendant has been unjustly enriched.

## COUNT VI
## TITLE VI (42 U.S.C. § 2000d)
## SPRINGFIELD COLLEGE

103.    Ms. Thopurathu incorporates by reference all other paragraphs of this Complaint as though fully stated herein.

104.    Title VI of the Civil Rights Act of 1964, codified as 42 U.S.C. § 2000d, prohibits discrimination based on national origin and religion.

105.    On information and belief, the Defendant Springfield College receives federal funding and is therefore subject to Title VI.

106.    Under Title VI, the Defendant Springfield College must ensure that students are not denied or limited in their ability to participate in or benefit from Defendant's educational programs or activities on the basis of national origin and religion.

107.    Ms. Thopurathu is a practicing Catholic of Indian descent.

108.    Medical abortions are incompatible with Ms. Thopurathu's religious and cultural practices.

109.    On information and belief, when the Administration learned about Ms. Thopurathu's reaction to the abortion procedure, via her Student Evaluation of the Clinical Site following her OBGYN rotation, it sought to dismiss Ms. Thopurathu for having personal values incompatible with those of the Administration.

110.     This expectation and the Administration's action against Ms. Thopurathu for her failure to conform, amounts to discrimination based on national origin and/or religion, in violation of Title VI.

111.     Ms. Thopurathu seeks compensatory damages in an amount to be determined by a jury, as well as all other available forms of relief including but not limited to punitive damages, attorney's fees, costs and interest.

### COUNT VII
### MASSACHUSETTS GENERAL LAWS, CHAPTER 93A
### SPRINGFIELD COLLEGE

112.     Ms. Thopurathu incorporates by reference all other paragraphs of this Complaint as though fully stated herein.

113.     Defendant Springfield College is a private, nonprofit educational institution with the charitable purpose of educating its students, from whom the Defendant receives money in the form of tuition, fees, room and board, and various other expenses related to the mission of education.

114.     When a nonprofit institution's actions are not in furtherance of its charitable purpose, the institution acts as a merchant engaged in trade or commerce within the meaning of M.G.L.c. 93A.

115.     Monitoring a student's personal beliefs about abortion and retaliating against that student when her beliefs fail to conform with the Administration's beliefs is not in furtherance of Defendant Springfield College's charitable purpose of education.

116.　　With respect to Ms. Thopurathu, Defendant Springfield College was a merchant engaged in trade or commerce within the meaning of M.G.L.c. 93A.

117.　　The Defendant's conduct, as aforesaid constitutes unfair and/or deceptive acts or practices as prohibited by M.G.L.c. 93A.

118.　　The Defendant's conduct, as aforesaid, was willful and knowing.

119.　　On July 19, 2024, the Plaintiff served a formal, written demand pursuant to M.G.L.c. 93A on the Defendant.

120.　　Ms. Thopurathu did not receive a satisfactory offer of settlement in response to the demand.

121.　　As a result of the Defendant's unfair and/or deceptive acts or practices, as aforesaid, Ms. Thopurathu suffered damages and incurred costs.

122.　　Ms. Thopurathu seeks compensatory and punitive damages in an amount to be determined by a jury, as well as all other available forms of relief including but not limited to treble damages, attorney's fees, costs and interest.

## COUNT VIII
### TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS AGAINST COOPER, CONNORS, MIGEON, AND MCGOWAN

123.　　Ms. Thopurathu incorporates by reference all other paragraphs of this Complaint as though fully stated herein.

124.　　Under Massachusetts law, a person may not intentionally interfere with the advantageous business relationship of another.

125.    The individual Defendants were aware of the existence of a contractual relationship between Springfield College and Ms. Thopurathu that contemplated a benefit to Ms. Thopurathu and intentionally interfered with that contractual relationship for an improper purpose and/or by improper means thereby causing damages to Ms. Thopurathu.

126.    As a direct and proximate result of these acts and omissions, Ms. Thopurathu has suffered and continues to suffer the harms and damages described above.

127.    Ms. Thopurathu seeks compensatory damages in an amount to be determined by a jury, as well as all other available forms of relief including but not limited to punitive damages, attorney's fees, costs and interest.

**COUNT IX**
**CIVIL CONSPIRACY**
**AGAINST COOPER, CONNORS, MIGEON, AND MCGOWAN**

128.    Ms. Thopurathu incorporates by reference all other paragraphs of this Complaint as though fully stated herein.

129.    As set forth herein, the Defendants formed an agreement amongst themselves and took steps in furtherance of this agreement to unlawfully dismiss Ms. Thopurathu from the Program, through wrongful and/or illegal acts which caused injury to Ms. Thopurathu.

130.    Ms. Thopurathu seeks compensatory damages in an amount to be determined by a jury, as well as all other available forms of relief including but not limited to punitive damages, attorney's fees, costs and interest.

## PRAYER FOR RELIEF

WHEREFORE, Alina Thopurathu as Plaintiff herein respectfully requests that this Court enter judgment against the Defendants jointly and severally on all counts of this Complaint. The Plaintiff further requests that this Court:

1. Allow the declaratory judgment as herein requested;

2. Order the Defendants to reverse their finding that the Plaintiff failed the Program; confer a degree to the Plaintiff; and authorize the Plaintiff to take the PANCE;

3. Award the Plaintiff compensatory damages in an amount to be determined at trial but not less than $500,000 for mental anguish, emotional distress, mental injury, injury to reputation, past and future economic loss, deprivation of due process, loss of educational opportunities, loss of future career prospects, and other injuries proximately caused by the wrongful conduct of all Defendants;

4. Award the Plaintiff compensatory damages in the amount that the Defendant Springfield College has been unjustly enriched by its wrongful conduct.

5. Award the Plaintiff the reasonable costs of this action, including attorneys' fees, expenses, costs, and disbursements pursuant to the provisions of M.G.L.c. 93A, or pursuant to any other statute, common-law doctrine, or power of the Court providing for the award of attorneys' fees, disbursements, expenses, and costs;

6. Award prejudgment interest; and

7.  Grant such other and further relief as this Court deems just and equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

FOR THE PLAINTIFF,
ALINA THOPURATHU,
BY HER ATTORNEY,


_____
Michael G. McDonough, Esq. BBO# 682128
Lauren F. Olanoff, Esq. BBO# 669371
Paul M. Bromwich, Esq. BBO# 712876
Egan, Flanagan & Cohen, P.C.
67 Market Street – P.O. Box 9035
Springfield, MA 01102-9035
Tel: (413) 737-0260; Fax: (413) 737-0121
Email: mgm@efclaw.com; lfo@efclaw.com
pmb@efclaw.com

July 11, 2025